| THIBODEAUX, Judge.
The Defendant, Lawrence J. Suire, a first time offender, pled guilty to communicating false information of arson or attempted arson by making a bomb threat in violation of La.R.S. 14:54.1. He was sentenced to ten years at hard labor. He appeals his sentence on the basis of exces-siveness. After a careful review of the record, we conclude that a ten year sentence is indeed excessive under the circumstances of this case. We, therefore, vacate the Defendant’s sentence and remand to the trial court for resentencing.

ISSUE

The issue is a straightforward one. Is a ten year sentence at hard labor for a first time offender for communicating a bomb threat to the Office of Community Services constitutionally excessive?

FACTS

The Defendant is a forty-nine year old physically disabled individual whose eleven year old daughter was removed from his custody by the Office of Community Services in December, 1998. The record is unclear as to the reasons for her removal. The Defendant testified at his sentencing hearing that his minor daughter was placed in a mental institution for “hallucinations” after she went to her mother’s house for a weekend visit on June 1, 1998.
On April 7, 1999, Mr. Suire communicated a threat to the Office of Community Services located in New Iberia in the form of a handwritten note which contained a formula for making an explosive device. The note was delivered by Mickey Suire along with a bag allegedly containing an *1167 explosive. The state police Lbomb squad investigated and a telephone paging device with an antenna was located in the bag. The device was determined not to be an explosive.
The Defendant readily admitted to writing the note. According to the Defendant, he wrote the note because of his frustrating experiences with the Office of Community Services. He had not seen his daughter since June 1, 1998 and did not understand why he had to undergo a psychiatric evaluation at the Office of Community Services’ request and then another evaluation after that office received the results of the initial evaluation. Furthermore, he expressed a feeling of helplessness in that he did not have the financial resources to mount an effective challenge to the Office of Community Services’ removal of his minor daughter from his custody. He “didn’t know what to do with [his] frustrations any longer.” He, therefore, penned the bomb threat and had it delivered to the Office of Community Services in New Iberia. He testified that he did not intend to hurt anyone.
The Defendant voluntarily surrendered to law enforcement authorities upon learning that he was being sought. He called his act “stupid” and never would have done it had he known of the consequences. He expressed his remorse to the court and testified that he owed apologies to a “whole lot of people.” The Office of Community Services, he testified, has no need to fear him. He simply wanted to see his daughter and “didn’t know how to act.” He would “give anything to forget that day ever happened.”
At the Defendant’s plea hearing, the State informed the trial court that the Defendant considered his actions to be a prank and did not intend to communicate a threat. However, the personnel at the Office of Community Services did not perceive the note and the alleged bomb device in that fashion, according to the State.
13At the sentencing hearing, his sister, Mary Bertrand, testified that the Defendant was a homebody who helped her care for their invalid mother. She confirmed that her brother had never been in trouble before and she has never seen him physically violent. The bomb threat was “definitely out of character” for him. He would verbalize his anger on occasion, according to his sister, but he did not have the capacity to implement a bomb threat. According to Ms. Bertrand, the defendant enjoyed a very close relationship with his minor daughter who had lived with him for approximately one-and-one-half years before being removed by the Office of Community Services.
Defendant’s brother, Kerry Suire, generally agreed with his sister’s testimony and offered that he would assist the Defendant in meeting his conditions of probation if the trial court considered probation an appropriate sentence.
Ms. Wanda Lamperez, along with'her two small children, lived with the Defendant for five-and-one-half years. She trusted the Defendant to take care of the children. Defendant, Ms. Lamperez testified, exhibited no evidence of physical violence and was a “very kind” person.
The State did not present any evidence at the sentencing hearing. Although several representatives from the Office of Community Services, along with their supervisor, attended the hearing, they declined to testify.

LAW AND DISCUSSION

Louisiana courts have universally recognized that the trial judge is given wide discretion in imposing a sentence. A sentenced imposed within statutory limits will not be deemed excessive in the absence of an abuse of discretion. In this case, the trial court acknowledged the Defendant’s remorse and decided that he must “pay Lfor what [he] did.” We agree. However, we do not agree that a ten year sentence at hard labor is warranted. The imposition of such a harsh sentence under *1168 the circumstances of this case constitutes an abuse of the trial court’s discretion.
The ten year sentence given in this case is excessive punishment in violation of Article 1, § 20 of the Louisiana Constitution, even though it falls within the statutory limit of twenty years under La.R.S. 14:54.1. This penalty is so grossly disproportionate to the severity of the Defendant’s conduct that it shocks our sense of justice. Additionally, it makes no measurable contribution to acceptable penal goals and is nothing more than needless imposition of pain and suffering. See State v. Hopkins, 96-1063 (La.App. 3 Cir. 3/5/97); 692 So.2d 538.
The trial court was impressed with the “compelling case” regarding the Defendant’s remorse and his lack of a dangerous propensity. However, it observed that the material it received from the Office of Community Services was “to the contrary.” The material suggested a history of threats against the Office of Community Services. The Defendant admitted that he threatened an Office of Community Services’ worker, but only out of anger and without any intent to harm the worker nor to implement the threat. The record lacks any submission from' the Office of Community Services. The only reference to any previous threat is contained in the Pre Sentencing Investigation Report. Significantly, representatives from the Office of Community Services were present at the sentencing hearing, yet declined to rebut the evidence put forth by the Defendant.
The trial court also observed that other members of the Defendant’s family considered him dangerous. However, no one testified regarding the Defendant’s dangerous character. In the Pre Sentencing Investigation Report, there is a reference to a letter written by the Defendant’s stepson. The stepson considered | Kthe Defendant to be dangerous. This letter was in the State’s file, according to the PSI, yet it was not introduced into evidence. The stepson, who lives in New Iberia, was not called by the State to testify.
In articulating a factual basis for its ten year sentence, the trial court found that the Defendant had a disabling mental condition for which he refused to take medication. Consequently, that condition placed others at risk because of the Defendant’s threats. There is nothing to indicate what that mental condition is. The Defendant admitted to Dr. James Blackburn and Dr. James Falterman, psychiatrists, that he had a “mental illness,” although he did not specify the nature of that “mental illness.” Dr. Blackburn’s Sanity Report, however, concludes that “Mr. Suire did not exhibit any indication of psychotic thought process or content.” The record does not disclose the need for medication. Indeed, the Defendant testified that he had not taken medication since he was seventeen years old when he was admitted to Southeast Louisiana State Hospital because of inability to cope with his father’s death. Mr. Suire has not been treated by any mental health profession or institutions since he was approximately seventeen years old.
The Defendant’s brother and sister verified that the Defendant was not taking, nor had anyone prescribed, medication for a mental condition. There is absolutely no evidence that the Defendant is a physical threat to anyone, other than the hearsay evidence contained within a letter supposedly contained within the State’s files. To the contrary, the evidence before us demonstrates that the Defendant is a nonviolent individual.
The trial court voiced concern that the Office of Community Services was “totally discombobulated.” Indisputably, there was some justified concern about the seriousness of the bomb threat. However, the fact that an office has to shut down |fiits operations for a brief period does not justify a ten year sentence to someone who had an unblemished juvenile and adult criminal record.
A careful consideration of all relevant mitigating and aggravating factors and an *1169 analysis of the trial court’s reasons for sentence lead to the inescapable conclusion that the record does not support the ten year sentence imposed on the Defendant, Lawrence J. Suire. The sentence is constitutionally excessive.

CONCLUSION

For the foregoing reasons, we conclude that the ten year sentence at hard labor imposed on the Defendant, Lawrence J. Suire, for violating La.R.S. 14:54.1 is excessive under the circumstances of this case. We, therefore, vacate his sentence and remand this case to the trial court for resentencing.
SENTENCE VACATED AND SET ASIDE; CASE REMANDED TO THE TRIAL COURT FOR RESENTENCING.