UTHIBODEAUX, Judge.
The Defendant, Lawrence J. Suire, was sentenced to ten years at hard labor after pleading guilty to communicating of false information of planned arson, a violation of La.R.S. 14:54.1. We vacated his sentence and remanded the matter to the trial court for resentencing upon determining that the sentence was excessive under the circumstances. State v. Suire, 00-599 (La. App. 3 Cir. 12/20/00); 775 So.2d 1166. On February 28, 2001, an evidentiary hearing was held regarding the resentencing and on April 24, 2001, Defendant was sentenced to eight years at hard labor. The Defendant again appeals on the ground of excessiveness. We again vacate his sentence as excessive and remand to the trial court for resentencing.

FACTS

In Defendant’s first appeal, this court set forth the facts of the case as follows:
The Defendant is a forty-nine year old physically disabled individual whose eleven year old daughter was removed from his custody by the Office of Community Services in December, 1998. The record is unclear as to the reasons for her removal. The Defendant testified at his sentencing hearing that his minor daughter was placed in a mental institution for “hallucinations” after she went to her mother’s house for a weekend visit on June 1,1998.
On April 7, 1999, Mr. Suire communicated a threat to the Office of Community Services located in New Iberia in the form of a handwritten note which contained a formula for making an explosive device. The note was delivered by Mickey Suire along with a bag allegedly containing an explosive. The state police bomb squad investigated and a telephone paging device with an antenna was located in the bag. The device was determined not to be an explosive.
State v. Suire, 775 So.2d 1166.
| .DISCUSSION
Defendant was charged with a violation of La.R.S. 14:54.1, communicating of false information of a planned arson, which provides for a term of imprisonment of not more than twenty years. Defendant received a sentence of eight years at hard labor.
In State v. Planco, 96-812, p. 8 (La.App. 3 Cir, 3/26/97); 692 So.2d 666, this court held:
Article 1, § 20 of the Louisiana Constitution of 1974, prohibits “cruel, excessive, or unusual punishment.” and a sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3 Cir. 1988). If a reviewing court finds that a penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering then that sentence is excessive. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
[[Image here]]
[T]he trial court is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210 (La.1982).
Id. at 670-671. Factors that this court may consider when reviewing the trial court’s imposition of a sentence are: 1) the *571 nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Medians, 98-419 (La.App. 5 Cir. 11/25/98); 722 So.2d 1086, writ denied, 98-3201 (La.4/23/99); 742 So.2d 876.
Concerning the nature of the crime, in its written Reasons and Resentencing, the trial court stated:
|/Turning first to the statute at issue, the legislature, within their constitutionally provided powers, has chosen to treat this offense, communicating a false threat of arson, very seriously. The state [sic] does not require or even contemplate that there be an actual bomb. It is the conveying of the threat which the legislature has made criminal conduct. The legislature has provided for a range in the penalty for this offense, from zero to twenty years.
When one contemplates the possible examples of the crime, one can envision factual situations more serious than the one at hand. A bomb threat at a hospital, a school, or a large office building, for example, would intimidate, frighten, and inconvenience a greater number of people. On the other hand, a threat at an isolated location, against a sole individual, would have less impact. In this case the threat was delivered to a public office staffed by state employees engaged in family service. One would expect members of the public, including children, to be present. The building was located in a residential neighborhood. It is the opinion of the court that the location of this threat is in the mid range of possible suites for this offense.
In its written Reasons and Resentenc-ing, the trial court noted that the majority of the evidence offered was previously offered into evidence at the guilty plea and the original sentencing hearing. “Only the live testimony of the receptionist at the Office of Family Services, and the live testimony of the State Police bomb technician, were added. In both instances, the bulk of their testimony was previously present in affidavits supporting the arrest.”
Melvin Rein, a certified bomb technician with the Louisiana State Police, testified regarding the procedures used to ascertain whether the bags left at the Office of Community Services at the same time as the note from the Defendant contained a bomb. Mavis David, the receptionist on duty the day the bomb threat was received, testified that there were several people in the office when she received the note from the Defendant’s brother. She stated she was in shock and did not consider the bags of clothing left at the same time she received the note until after the office was evacuated.
| ^Gerald Harrington, a ease worker for the Office of Community Services, also testified. He verified that he wrote an incident report, dated October 23, 1998, regarding a telephone conversation he had with the Defendant, wherein the Defendant made threatening statements to him concerning the Defendant’s daughter.
Additionally, a close friend of the Defendant’s family, Bertha Theriot, who assumed the care of Defendant’s mother after his sister died, testified for the defense. Theriot testified that she has known the Defendant for twenty-six years and was of the opinion the bomb threat was out of character. She further testified that she believed the Defendant would be no risk of harm to anyone should he be placed on probation.
Regarding the background and nature of the offender, this court observed in Swire, 775 So.2d 1166:
*572 The Defendant readily admitted to writing the note. According to the Defendant, he wrote the note because of his frustrating experiences with the Office of Community Services. He had not seen his daughter since June 1,1998 and did not understand why he had to undergo a psychiatric evaluation at the Office of Community Services’ request and then another evaluation after that office received the results of the initial evaluation. Furthermore, he expressed a feeling of helplessness in that he did not have the financial resources to mount an effective challenge to the Office of Community Services’ removal of his minor daughter from his custody. He “didn’t know what to do with [his] frustrations any longer.” He, therefore, penned the bomb threat and had it delivered to the Office of Community Services in New Iberia. He testified that he did not intend to hurt anyone.
The Defendant voluntarily surrendered to law enforcement authorities upon learning that he was being sought. He called his act “stupid” and never would have done it had he known of the consequences. He expressed his remorse to the court and testified that he owed apologies to a “whole lot of people.” The Office of Community Services, he testified, has no need to fear him. He simply wanted to see his daughter and “didn’t know how to act.” He would “give anything to forget that day ever happened.”
[[Image here]]
At the sentencing hearing, his sister, Mary Bertrand, testified that the Defendant was a homebody who helped her care for their invalid mother. She confirmed that her brother had never been in trouble before and she has never seen him physically violent. The bomb threat was “definitely out of character” for him. He would verbalize his anger on occasion, according to his sister, but he did not have the capacity to implement a bomb threat. According to Ms. Bertrand, the defendant enjoyed a very close relationship with his minor daughter who had lived with him for approximately one-and-one-half years before being removed by the Office of Community Services.
[[Image here]]
The trial court was impressed with the “compelling case” regarding the Defendant’s remorse and his lack of a dangerous propensity. However, it observed that the material it received from the Office of Community Services was “to the contrary.” The material suggested a history of threats against the Office of Community Services. The Defendant admitted that he threatened an Office of Community Services’ worker, but only out of anger and without any intent to harm the worker nor to implement the threat. The record lacks any submission from the Office of Community Services. The only reference to any previous threat is contained in the Pre-Sentencing Investigation Report. Significantly, representatives from the Office of Community Services were present at the sentencing hearing, yet declined to rebut the evidence put forth by the Defendant.
[[Image here]]
In articulating a factual basis for its ten year sentence, the trial court found that the Defendant had a disabling mental condition for which he refused to take medication. Consequently, that condition placed others at risk because of the Defendant’s threats. There is nothing to indicate what that mental condition is. The Defendant admitted to Dr. James Blackburn and Dr. James Falterman, psychiatrists, that he had a “mental ill *573 ness,” although he did not specify the nature of that “mental illness.” Dr. Blackburn’s Sanity Report, however, concludes that “Mr. Suire did not exhibit any indication of psychotic thought process or content.” The record does not disclose the need for medication. Indeed, the Defendant testified that he had not taken medication since he was seventeen years old |7when he was admitted to Southeast Louisiana State Hospital because of inability to cope with his father’s death. Mr. Suire has not been treated by any mental health profession or institutions since he was approximately seventeen years old.
[[Image here]]
The trial court voiced concern that the Office of Community Services was “totally diseombobulated.” Indisputably, there was some justified concern about the seriousness of the bomb threat. However, the fact that an office has to shut down its operation for a brief period does not justify a ten year sentence to someone who had an unblemished juvenile and adult criminal record.
Id. at 1167-1168.
The defendant in State ex rel. R.T., 33,-246 (La.App. 2 Cir. 12/23/99); 748 So.2d 1256, affirmed in part, reversed in part, 00-0205 (La.2/21/01); 781 So.2d 1239, was found guilty of communicating information of planned arson and was sentenced to one year at hard labor with credit for all time served and a recommendation that he be placed in a non-secure setting. The threat in R.T. occurred shortly after the Columbine High School shooting. Rumors began to circulate at the high school that if a similar crime were to be executed at their school, R.T. would be the likely suspect. After being repeatedly asked, R.T. finally responded that he was going to blow up the school.
In State v. Sloan, 32,101 (La.App. 2 Cir. 8/18/99); 747 So.2d 101, the defendant was sentenced to five years at hard labor for attempted communication of false information of planned arson after he called his bank and made bomb threats. The defendant appealed his conviction and sentence. However, the appellate court acquitted the defendant, therefore the issue of excessiveness of his sentence was never discussed.
|RWe have found only one Louisiana case in which the issue of the excessiveness of the sentence imposed for the crime of communicating false information of planned arson was discussed. In State v. McKeel, 443 So.2d 753 (La.App. 4 Cir. 1983), the defendant was sentenced to two twenty-year terms of imprisonment at hard labor. The defendant had, previous to the case, burned down a business and served a period of probation for that offense. McKeel was convicted on two counts of communicating false information of planned arson, after twice threatening to burn down the same business as it was being rebuilt. He appealed his convictions and sentences alleging that La.R.S. 14:54.1 was unconstitutional. The fourth circuit found the wording of the statute to be overly vague. Furthermore, the fourth circuit also found the sentencing provision of the statute unconstitutional in comparison to other crimes that involved arson. The fourth circuit stated:
A comparison of the penalties provided for other crimes in Louisiana shows that the twenty year maximum penalty of R.S. 14:54.1 is grossly disproportionate. The maximum sentence for aggravated arson is twenty years at hard labor and a fine of twenty-five thousand dollars. La.R.S. 14:51. The maximum penalty for simple arson where the damage is more than five hundred dollars is fifteen years at hard labor and a fine of fifteen thousand dollars.
*574 * :¡: *
In order to be constitutional, the maximum penalties must be proportionate to the degree of culpability and damage to society. See Coker v. Georgia, supra [438 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977)], and State v. Goode, supra [380 So.2d 1361 (La.1980)]. The penalty provision of R.S. 14:54.1, however, is not based on a rational gradation of culpability; the maximum sentence is disproportionate to the severity of the crime.
Id. at 755-756.
On review, the supreme court held the statute was not overly vague. State v. McKeel, 452 So.2d 1171 (La.1984). However, the supreme court did not |9discuss whether Defendant’s sentences were excessive, because it also determined the evidence was insufficient to support the convictions and acquitted the defendant of the charges.
Although the following are not Louisiana cases, and the length of the sentences were not at issue, they give some guidance on sentences imposed for the same or similar offenses: In U.S. v. Spruill, 118 F.3d 221 (1997), the defendant was sentenced to five years. On April 22, 1995, three days after the Oklahoma City bombing took place, defendant called the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco and Firearms offices in Norfolk, Virginia, over two hundred times within an eighteen-hour period. He was found guilty on three counts of communicating false threats. In U.S. v. Klingensmith, 17 M.J. 814 (1984), the appellate court affirmed defendant’s sentence of one year of hard labor. Defendant pled guilty to making a false official statement, simple arson, and three specifications of maliciously conveying false information by telephone. The offense of maliciously conveying false information consisted of two bomb threats to the military police and one call concerning the whereabouts of a dead body. In Moosavi v. State, 355 Md. 651, 736 A.2d 285 (1999), defendant was sentenced to thirty days in jail, suspended, with two years of probation on a conviction for transmittal of false statements or rumors about location or detonation of a bomb or an explosive to a bank. The defendant in U.S. v. Irving, 509 F.2d 1325 (5th Cir.1975) received one year at hard labor, suspended, for a charge of conveying false information with the knowledge of its falsity.
Analytically, the crime the Defendant perpetrated is virtually the same as aggravated assault. He used what would be considered as a deadly weapon (a duffel bag containing what appeared to be an explosive) in order to place numerous people in reasonable apprehension of receiving a battery. See La.R.S. 14:36, et seq. |inWe observe that the maximum sentence for aggravated assault is six months. See La.R.S. 14:37(B). Aggravated assault with a firearm which requires the discharge of a firearm, the most extreme case of assault, requires a maximum penalty only of five years. See La.R.S. 14:37.4. Thus, a sentence of eight years in this case is not warranted when considering the maximum penalties for aggravated assault and the degree of culpability of the Defendant’s actions. Even if this Defendant was charged with numerous counts of aggravated assault, each sentence would be expected to run concurrently because he has no prior criminal history. See La.Code Crim.P. art. 883. Thus, sentencing this Defendant to eight years is excessive and, given the circumstances, this sentence shocks our court’s sense of justice and is grossly disproportionate to the severity of the crime.
Article 881.4 of the Code of Criminal Procedure allows an appellate court to provide some direction to the trial court regarding a proper sentence to impose. In *575 this case, the degree of culpability of the offense committed by the Defendant is very low. The building the Defendant threatened contained only a few persons, he presented no means of carrying out his threat, nor the intention to implement his threat, and the Defendant had no prior criminal record. Thus, a sentence not exceeding two years would be appropriate.

CONCLUSION

For the foregoing reasons, we vacate Lawrence Suire’s sentence of eight years at hard labor and remand to the trial court for resentencing.
SENTENCE VACATED AND SET ASIDE. CASE REMANDED TO THE TRIAL COURT FOR RESENTENCING.
AMY, J., dissents.