STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-976

STATE OF LOUISIANA

VERSUS

CHARLES JOSEPH STEVENS

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, DOCKET NO. 06-1933
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Billy H. Ezell, J. David Painter, and James T. Genovese, Judges.

AFFIRMED AND REMANDED
WITH INSTRUCTIONS.

Mark O. Foster
Louisiana Appellate Project
Post Office Box 2057
Natchitoches, Louisiana 71457
(318) 572-5693
COUNSEL FOR DEFENDANT/APPELLANT:
    Charles Joseph Stevens

J. Phil Haney
District Attorney - Sixteenth Judicial District
ADA Jeffrey J. Trosclair
St. Mary Parish Courthouse, 5th Floor
Franklin, Louisiana 70538
(337) 828-4100, EXT. 550
COUNSEL FOR APPELLEE:
    State of Louisiana

**GENOVESE, Judge.**

On November 14, 2006, the Defendant, Charles Joseph Stevens, was charged by bill of information with one count of communication of false information of planned arson, a violation of La.R.S. 14:54.1, and with one count of aggravated assault, a violation of La. R.S. 14:37. On April 26, 2007, a jury trial was held on count one, a felony charge, while count two, a misdemeanor charge, was presented to the trial court for bench trial. The Defendant was subsequently found guilty on both the felony and misdemeanor charges.

On May 22, 2007, the Defendant was sentenced to eight years at hard labor on the felony conviction of communication of false information of planned arson, with credit for time served, and six months in the parish jail on the misdemeanor conviction of aggravated assault, to run concurrently with each other, but consecutively to all other sentences. On June 7, 2007, the Defendant filed a motion to reconsider the sentence imposed for his felony conviction of false communication of planned arson. The motion was summarily denied on June 11, 2007. The Defendant is now before this court on appeal, asserting that the evidence was insufficient to convict him of false communication of planned arson and that his eight-year sentence for same is excessive. We affirm the Defendant's conviction and sentence.

**FACTS**

On October 2, 2006, the Defendant engaged in a verbal altercation with his girlfriend, Cheryl Thibodeaux (Cheryl), while at the home of Rita G. Williams (Rita). Rita asked the Defendant to leave, and he refused to do so and pushed Rita to the side. Next, Cheryl raised a hammer as if she was going to hit the Defendant. The

1

Defendant then took the hammer from her and threw it, striking her in the ankle area. When Rita picked up the phone to call the police, the Defendant exited the home. Before leaving on his bicycle, the Defendant threatened to return to the home, nail the door shut, and set the home on fire with Cheryl, Rita, and Rita's two young children inside. Upon the arrival of the police, Rita reported the incident. The Defendant was later located, arrested, and charged as set forth above.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note that there is an error patent, an error in the court minutes, and one procedural issue that must be addressed.

In this case, there was a misjoinder of offenses in the bill of information. In a single bill of information, the State charged the Defendant with a felony, communication of false information of planned arson, and a misdemeanor, aggravated assault. Louisiana Code of Criminal Procedure Article 493 provides for the joinder of offenses in a single bill of information under limited circumstances, if the offenses joined are triable by the same mode of trial. The misdemeanor offense of aggravated assault is triable by a judge only; whereas, the felony offense of communication of false information of planned arson is triable by a jury. *See* La.R.S. 14:37, 14:54.1, and La.Code Crim.P. arts. 779 and 782. Because the Defendant was entitled to a jury trial for the felony charge and was not entitled to a jury trial on the misdemeanor charge, the offenses were not triable by the same mode of trial and should not have been charged in the same bill of information. *See* La.Code Crim.P. art. 493. However, because the Defendant failed to file a motion to quash the bill of

2

information based on the misjoinder, he waived any objection to the error. *See* La.Code Crim.P. art. 495 and *State v. Mallett*, 357 So.2d 1105 (La.1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 848 (1979). Accordingly, we find the issue of misjoinder to have been waived.

Next, we note that since the aggravated assault charge was not triable by a jury, the proper mode of appellate review for that offense is an application for writ of review rather than an appeal. *See* La.Code Crim.P. art. 912.1. In *State v. Turner*, 04-1250 (La.App. 3 Cir. 3/2/05), 896 So.2d 286, *writ denied*, 05-871 (La. 12/12/05), 917 So.2d 1084, this court severed a misdemeanor conviction for possession of marijuana from the defendant's appeal of two felony convictions. This court ordered the "defendant to file a writ of review regarding the possession of marijuana conviction in compliance with the Rules of Court." *Id.* at 289. In *Turner*, the court noted that the defendant did not make any specific arguments regarding the misdemeanor conviction. This court considered the notice of appeal as a notice to file a writ of review within thirty days of its opinion, if the defendant desired to seek review of his misdemeanor conviction.

As in *Turner*, the Defendant has not raised any assignment of error regarding his misdemeanor conviction. Therefore, as was done by this court in *Turner,* we sever the misdemeanor conviction from the appeal and order the Defendant to file a writ of review regarding the misdemeanor conviction in compliance with the Uniform Rules of Court, should he so desire.

Additionally, the minutes of sentencing contain an error. The minutes of sentencing state in pertinent part:

> The court sentenced the defendant in [sic] the charge of communication of False Information of a Planned Arson to serve eight

3

(8) years at hard labor, with credit for time served. The defense requested to make these sentences concurrent. The court denied this motion. The Court sentenced the defendant in [sic] the charge of Aggravated Assault to serve six (6) months in the parish jail to run concurrent with the Communication of False Information of a Planned Arson and consecutive with each other.

The transcript of sentencing provides in pertinent part: "For those reasons, the court sentences Mr. Stevens to serve eight years at hard labor. . . No, it's consecutive. On the other matter, I sentence him to serve six months in the parish jail. The sentence is concurrent with the sentence for the false information but consecutive to *all other sentences*." (Emphasis added). Therefore, we remand the case to the district court with instructions to amend the minutes of sentencing to correctly reflect the transcript of sentencing.

## ASSIGNMENTS OF ERROR

The Defendant presents two assignments of error:

1.  The evidence was insufficient to support a conviction for communication of false information of a planned arson in violation of La. R.S. 14:54.1.

2.  The sentence imposed by the trial court was cruel, unusual, and excessive in violation of Article I, §20 of the Louisiana Constitution of 1974.

### Assignment of Error Number One

In this assignment of error, the Defendant argues that the evidence was insufficient to support a conviction for communication of false information of a planned arson. The analysis for a claim of insufficient evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559

4

(La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The elements of the instant crime are set forth in La.R.S. 14:54.1 which reads, in pertinent part:

A. Communicating of false information of arson or attempted arson is the intentional impartation or conveyance, or causing the impartation or conveyance by the use of the mail, telephone, telegraph, word of mouth, or other means of communication, of any threat or false information knowing the same to be false, including bomb threats or threats involving fake explosive devices, concerning an attempt or alleged attempt being made, or to be made, to commit either aggravated or simple arson.

At trial, Rita testified that, on October 2, 2006, she was living in New Iberia, Louisiana, with her two young boys. Cheryl and the Defendant, Rita's cousin, were staying with her at the time. That day, Rita got off work at 2:00 p.m. and walked home with a friend. When she arrived at the end of her driveway, she could hear Cheryl and the Defendant arguing. Rita stated that she called the police. When the police arrived, they asked the Defendant to leave, and he left.

According to Rita, the Defendant returned to the home after the police left. Rita asked the Defendant not to enter her home, but he did not comply and pushed her to the side. Cheryl's version of the story was somewhat different in that she stated that the Defendant pushed Rita when she was trying to get him to calm down. According to Cheryl, the Defendant arrived at the home intoxicated and was

5

"fussing" with her for no reason. After Rita was pushed by the Defendant, Cheryl grabbed a hammer and stated that she acted as if she was going to hit the Defendant with the hammer, but did not follow through. Rita and Cheryl both testified that the Defendant took the hammer from Cheryl and threw it at her, hitting her in the ankle/foot area.

Rita testified that she continued to ask the Defendant to leave and threatened to call the police again. The Defendant did not leave until she picked up the phone and told him that the police were on the way. Next, Rita explained that the Defendant went outside and then threatened to return after they went to sleep to nail the door shut and to set the trailer on fire with Cheryl, Rita, and Rita's two children trapped inside. Cheryl testified that she also heard the Defendant threaten to return and burn down the trailer with Cheryl, Rita, and Rita's children inside. He then hopped on his bike and rode away. Rita added that the police arrived a second time, and they later returned with the Defendant in the police car. At trial, both Rita and Cheryl identified the Defendant in the courtroom.

Deputy Robert Burns was scheduled to testify, but the parties agreed to stipulate that Deputy Burns, if called to testify, would testify consistently with his narrative report of the investigation. Deputy Burns indicated in his report that, according to Rita, the Defendant had returned to her home after deputies had advised him earlier that day to leave and not return. Rita advised Deputy Burns that the Defendant started yelling at her and Cheryl. When she told him to leave, the Defendant picked up a hammer and threw it at Cheryl, just missing her left foot. Rita reported to Deputy Burns that she told the Defendant to leave and that, while he was exiting the front door, the Defendant stated that he would be back later when they

6

were sleeping, he would nail the door shut, and he would set the residence on fire with everyone in it.

Deputy Burns indicated that he left the residence and canvassed the area looking for the Defendant. Deputy Burns located the Defendant riding his bike and stopped and questioned him. Next, after the Defendant was *Mirandized*[1] and expressed his understanding of same, the Defendant advised Deputy Burns that he did not mean what he said to Rita and Cheryl and that it was "just talk." Deputy Burns reported a strong odor of alcoholic beverage on the Defendant's breath and person. At that point, the Defendant was taken into custody, transported to jail, and charged accordingly.

In his brief to this court, the Defendant asserts that the State offered little or no evidence to prove beyond a reasonable doubt that the threat was not true. The Defendant adds that if there is any reasonable possibility that the statement was true, then the conviction fails. In support of his argument, the Defendant refers this court to *State v. McKeel*, 452 So.2d 1171 (La.1984). In *McKeel*, the defendant had pled guilty to simple arson of a business and received a three year suspended sentence, five years probation, and a $3,000.00 fine. While on probation from the arson conviction, the defendant entered the same business which was being repaired at the time and told a carpenter that he was going to burn the building down again. About a month later, the defendant drove up to the business again and shouted to the same carpenter that he thought he had burned it down for good. The defendant was arrested and charged

---

[1] In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), the United States Supreme Court held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination, i.e., the suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and the police must explain this right to the suspect before questioning begins.

with two counts of communicating threats of arson in violation of La.R.S. 14:54.1. The defendant was convicted in the trial court, but the convictions were reversed on appeal because the court found the statute to be unconstitutionally vague. The supreme court concluded that the statute was not vague, but that the record was devoid of any evidence which would show that the defendant's statements were made knowing them to be false.

We note that, in *McKeel*, the supreme court did not expound on its conclusion regarding the lack of evidence to convict the defendant. Thus, only the facts mentioned above are known to compare to the instant case. The Defendant, nonetheless, contends that the only evidence offered with regard to whether or not the threat was true was the stipulated police report wherein Deputy Burns quoted the Defendant as saying that he was sorry and that he did not mean what he said.

Additionally, the Defendant complains that the State did not ask the alleged victims if they actually believed that the Defendant was serious when he made the threat to burn down the home. In support of his argument, the Defendant refers to *State ex rel. R.T.*, 00-205 (La. 2/21/01), 781 So.2d 1239, wherein a student made statements that he was going to blow up a high school. The state introduced the testimony of two witnesses to the principal incident underlying the charge of the offense. Both witnesses testified that, when asked if he was going to blow up the school, the defendant answered in the affirmative in a serious manner. Also, the defendant admitted at trial that the exchange concerning a bomb did take place, but that he had no true intent to do so. Thus, the supreme court concluded that the state presented uncontradicted evidence that information of a planned bombing was communicated and that the communication was false.

8

First, with regard to the element of knowingly making a false statement, the stipulated police report of Deputy Burns is sufficient evidence to prove this element. In *State v. Bernard*, 98-994, p. 7 (La.App. 3 Cir. 2/3/99), 734 So.2d 687, 691 (citations omitted), this court stated, "It is well settled in Louisiana law that a jury may rely on a single witness's testimony to establish a factual element required to prove guilt, provided there is no internal contradiction or irreconcilable conflict with physical evidence." The Defendant's statement to Deputy Burns that he did not mean what he said to Rita and Cheryl clearly indicates that he knowingly made a false statement.

Secondly, whether or not Rita and Cheryl thought that the Defendant's threat was serious is not an element of the offense, but may indicate whether or not a threat was made. Although the Defendant is correct in stating that Rita and Cheryl were not asked at trial if they thought the Defendant's threat was serious, the fact that Rita called the police twice, the second time reporting the Defendant's threat of arson, supports the notion that she took his threat seriously. Also, Rita experienced and witnessed threatening, physical behavior when the Defendant pushed her and threw a hammer at Cheryl. Additionally, the Defendant was under the influence of alcohol, which could lead Rita and Cheryl to the conclusion that the Defendant might act irrationally and follow through with his threat. Lastly, the threat itself is barbaric and threatened not only the lives of Rita and Cheryl but the lives of two innocent children. Accordingly, the triers of fact were likewise entitled to conclude, based on the evidence presented, that a reasonable person hearing the Defendant's threat to trap the occupants in the home and burn the home down would have taken the threat seriously.

9

Thirdly, although not an element of the crime, the Defendant states that his threat was private and not public. The Defendant asserts that if this case is affirmed, then it will be the first recorded case of a conviction under La.R.S. 14:54.1 for a private statement made in a private home. He maintains that the instant case involves a drunken domestic argument in a private home and that La.R.S. 14:54.1 was not an appropriate statute upon which to prosecute the Defendant in this matter. Again, it is noteworthy that the statute does not require the offense to have occurred in a public setting, although the reported cases do involve public places. Without such a requirement, this court must interpret the statute as stated, which does not exclude a threat made in a private setting.

Lastly, the Defendant argues that the type of behavior described herein is not the type of behavior envisioned by La.R.S. 14:54.1. The Defendant notes that the maximum sentence for a false communication of arson is the same as, or greater than, the maximum sentence for actually burning the structure down. Next, the Defendant asserts that had he truthfully threatened to burn the home down and then attempted to do same, he would have been exposed to one-half of the sentence he faced for the instant offense wherein he allegedly threatened to burn the home, but then did nothing.

Regardless of the penalties for the offenses the Defendant mentions herein, and which do not pertain to this matter, the evidence in the record supports the jury's conclusion that the elements of the crime were proven at trial. The fact that the maximum penalty for the instant offense appears harsh compared to the penalties for arson-related crimes shows the legislature's intent to deter the occurrence of these types of threats, not that it did not envision the type of behavior exhibited herein.

10

Accordingly, there was sufficient evidence in the record to support Defendant's conviction; therefore, his conviction is affirmed.

***Assignment of Error Number Two***

In this assignment of error, the Defendant argues that his sentence was cruel, unusual, and excessive. This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1597, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

To decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize

11

the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

The penalty for communicating false information of arson is not more than twenty years at hard labor. *See* La.R.S. 14:54.1(B). Thus, the Defendant's eight-year sentence was less than one-half of the maximum possible sentence.

In his motion to reconsider sentence, the Defendant asked the trial court to reduce his sentence because the false communication for which he was convicted was made to only two people regarding a residence in which the Defendant resided with those same two people. As such, the Defendant concludes that the offense does not fall within the broader scope of the statute which he alleges is designed to protect the public at large from such statements. Next, the Defendant contends that the false communication was part of a series of drunken outbursts made within a family setting on the same day, thereby diminishing the impact which it may have had on the victims. Lastly, because of the Defendant's assertion that the offense carried a lesser impact than that intended to be within the scope of La.R.S. 14:54.1, he urged the trial court to run the sentence imposed for this offense concurrently with his earlier sentence.

In his appellate brief, the Defendant questions how a private false statement with no public disruption could justify an eight-year sentence. The Defendant maintains that this issue is addressed in *State v. Suire*, 02-411 (La.App. 3 Cir. 10/2/02), 827 So.2d 569, wherein this court held that the defendant's eight-year sentence for communicating false information of a planned bombing of the Office of

12

Community Services (OCS) in New Iberia was excessive. Pursuant to *State v. Medious*, 98-419 (La.App. 5 Cir. 11/25/98), 722 So.2d 1086, *writ denied*, 98-3201 (La. 4/23/99), 742 So.2d 876, the following factors were considered by the court in *Suire* in reviewing the trial court's sentence: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts.

With regard to the nature of the crime in *Suire*, the trial court noted that a bomb threat was delivered to a public office staffed by state employees engaged in family service wherein one would expect the public, including children, to be present. Also, the building was located in a residential neighborhood.

Concerning the background and nature of the defendant in *Suire*, the trial court observed that the defendant readily admitted to writing the note and did so because of his frustrating experiences with OCS involving the removal of his daughter from his custody. He voluntarily surrendered upon learning that he was being sought and called his act "stupid" and that he would have never done it had he known of the consequences. The defendant expressed his remorse to the court. He stated that he owed apologies to a lot of people and that the OCS has no need to fear him. Testimony at sentencing indicated that the defendant was a homebody who helped care for his invalid mother, had never been in trouble before, and had never been physically violent. The bomb threat was out of character for him. Although the trial court focused on material from the OCS which suggested a history of threats against the OCS, this court noted that the record lacked any submission from the OCS, and the only reference to any previous threat was contained in the Pre-Sentencing Investigation Report. Additionally in *Suire*, this court could find no evidence in the

record to support the trial court's finding that the defendant had a disabling mental condition for which he refused to take medication. Two psychiatrists indicated that he suffered from a mental illness, but the illness was not identified, and the record did not disclose the need for medication.

Lastly, this court in *Suire* compared sentences imposed for similar crimes by this court and other courts, including federal courts. In *State ex rel. R.T.*, 33,246 (La.App. 2 Cir. 12/23/99), 748 So.2d 1256, *aff'd in part*, *rev'd in part*, 00-205 (La. 2/21/01), 781 So.2d 1239, the facts of which were previously discussed, the defendant was sentenced to one year at hard labor. In *State v. Sloan*, 32,101 (La.App. 2 Cir. 8/18/99), 747 So.2d 101, the trial court sentenced the defendant to five years at hard labor for attempted communication of false information of planned arson after calling his bank and making bomb threats. He was acquitted on appeal; thus, the excessiveness of his sentence was never discussed. Also, the defendant in *McKeel* was sentenced by the trial court to two twenty-year sentences at hard labor. As previously mentioned, the defendant was acquitted of the crimes, and, thus, the excessiveness of his sentences was not discussed.

In *Suire*, this court concluded that analytically, the crime is virtually the same as aggravated assault which carries a maximum sentence of six months, while aggravated assault with a firearm, the most extreme case of assault, requires a maximum penalty of five years. Considering same, the court held that the eight-year sentence was not warranted. The court also noted that the decree of culpability was very low, that the building contained only a few people, that the defendant presented no means of carrying out his threat nor the intention to implement his threat, and that he had no prior criminal record.

14

In the instant case, the trial court made the following observations in sentencing the Defendant:

> All right. The court considers the following in the sentence for Mr. Stevens.
>
> His prior record: Distribution of cocaine, attempted simple robbery, simple robbery, two counts of simple robbery.
>
> The court considers that he is a danger to society as a result of his previous background and what he asserted in this case and what happened in this case with regards to the assault.
>
> The court finds a lesser sentence would deprecate the seriousness of this matter and the seriousness of his past record.
>
> He's in need of correctional treatment which can be best satisfied by incarceration.
>
> The court finds that he was particularly cruel to the victim involved in this matter in what he told the victim and what he did to the victim.

With regard to the factors discussed in *Suire*, the trial court noted that the crime was particularly cruel. We note that none of the cases cited by the Defendant involved a direct threat of harm to a person's child. Unlike the defendant in *Suire*, in the instant case, the Defendant has an extensive criminal history; however, Defendant's prior crimes did not involve violence. With regard to sentences imposed for similar crimes by this court and other courts, we note that there have been no reported cases involving sentencing for this crime since *Suire*.

Considering the facts of the instant case, the fact that the Defendant received less than one-half of the maximum possible sentence, and the Defendant's prior criminal history, we do not find the Defendant's sentence to be excessive, as it does not shock one's sense of justice. Consequently, we affirm the Defendant's sentence.

15

**CONCLUSION**

The Defendant's conviction and sentence are affirmed. Additionally, we sever the Defendant's misdemeanor conviction from his appeal and instruct the Defendant that, if he chooses to seek review of his misdemeanor conviction, he must file an application seeking supervisory review with this court within thirty days of this court's ruling on his appeal. Further, we remand this case to the trial court with instructions that it amend its minutes of the Defendant's sentencing to correctly reflect the transcript of sentencing.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**